# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
### CASE NO. 08-20200-CIV-COOKE/BANDSTRA

GRAZIA ANTONELLA BOCCIOLONE, *et al.*,

     *Plaintiff*s,

v.

JAY SOLOWSKY, *et al.*,

     *Defendants*,

_____/

## ORDER DENYING REIZEN'S AND SOLOWSKY, AND PERTNOY
## & SOLOWSKY'S MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT

     This matter is before me on Edward Reizen's ("Reizen") motion to dismiss [D.E. 20] and

Jay Solowsky ("Solowsky") and the law firm of Pertnoy, Solowsky & Allen P.A.'s ("P&S")[1]

motion to dismiss [D.E. 24].  For the reasons stated below, the motions to dismiss are denied.

## *I. BACKGROUND*

     Grazia Antonella Bocciolone ("Bocciolone") and David Wayne Brenman ("Brenman"

and collectively "Plaintiffs") worked on investment strategies for Tambourine Comercio

International S.p.A. ("Tambourine"), a subsidiary of Sitindustrie S.p.A. ("Sitindustrie"), a

company owned by the Bocciolone family.[2]  In 1997, Tambourine had in excess of $20,000,000

to invest.  In 1998, Brenman, acting on behalf of Tambourine entered into an investment

agreement with Lionheart International (KJD) Ltd. ("Lionheart"), and pursuant to this agreement,

---

[1] Pertnoy and Allen were never named as individual Defendants.

[2] Plaintiffs filed 34 pages of facts, therefore the Court has summarized the facts pertenant to these motions to dismiss.

transferred $20,000,000 into a bank account held jointly by Tambourine and Lionheart.  As the profits were lower than expected, Brenman requested the return of the money.  In 1999, Lionheart transferred $10,000,000 back to Tambourine, and Bocciolone and Brenman continued their attempts, on behalf of Tambourine, to recover the remaining $10,000,000 ("the Lionheart ten million").  That same year, Reizen joined the board of directors of Hawksbay Ltd. ("Hawksbay"), a sister company of Tambourine.  Reizen allegedly made representations to Plaintiffs that he had significant experience in fund management and investment of funds.  He then convinced Tambourine to invest the $10,000,000, which was returned, into Hawksbay ("the Hawksbay ten million").  Reizen also recommended to Brenman that Tambourine retain  P&S to assist in the return of the Lionheart ten million, as Solowsky had been Reizen's personal lawyer for a long period of time.  After P&S wrote several letters demanding the funds, some money was transferred back to Tambourine.  Plaintiffs allege that Reizen represented to them that P&S would bill their services directly to Reizen and that Tambourine never received any invoice.

Plaintiffs further contend that, in 2001, Reizen advised them that the money invested in Hawksbay was subject to sequestration by the Office of Foreign Asset Control of the United States Treasury Department and requested additional money to be paid to Bland Payne Holdings, USA, Inc. ("Bland Payne"), the administrator of the Hawksbay investment.  This was in order "to facilitate the payment of legal fees necessary to cause the release of the Hawkbay money."  (Pls.' Compl. 16, 4).  Reizen continued to collect for the Bland Payne account money in excess of $700,000 from Plaintiffs' personal funds.

In 2003, Joel Weiss ("Weiss"), an attorney hired by Sitindustrie and representing Tambourine and Hawksbay, was trying to locate the $20,000,000.  In May 2003, he contacted

2

Solowsky, who first requested to be paid $8,100 for his 1999 services.  Sitindustrie made the

payment and received from Solowsky, on May 7, 2003, a copy of his 1999 Tambourine file and a

memorandum (the "Solowsky Memorandum") questioning, *inter alia*, the contradictory

instructions given by Bocciolone and Brenman, and their reluctance to continue with Solowsky

to attempt to locate the funds, even though it appeared that Tambourine was victim of a fraud.

The Memorandum also suggests that Bocciolone and Brenman might have been paid back

without the P&S intervention.  Since then, Sitindustrie used the Solowsky Memorandum in

numerous litigations instituted against Bocciolone and Brenman.  Plaintiffs allege that Solowsky

"knew that his description of facts and events was false and misleading, as neither Ms.

Bocciolone nor Mr. Brenman had been informed in 1999 by Solowsky of his 'concern of a

possible fraud' and had therefore not made any decision to pursue legal action against the

managers of the Tambourine Funds."  (Pls.' Compl. 24, 11).

In October 2003, Plaintiffs contend that a significant part of the funds from the Hawksbay

transaction and from the $700,000 of personal funds were transferred to the P&S bank account,

even though the firm knew that Plaintiffs were attempting to claim them back.  Bocciolone and

Brenman were not notified of this transfer.  In late October, while Plaintiffs were being sued by

the Bocciolone family for allegedly having stolen these funds, Solowsky contacted Weiss on

several occasions to discuss a possible return of the funds.  Weiss recorded a telephone

conversation (the "October 31 Telephone Conversation").  (Solowsky and P&S Mot. to Dismiss,

Appx. 3).  Solowsky claimed that he could assist in the return of the Hawksbay ten million,

minus five million allegedly lost due to Brenman's personal investments and ensuing recovery

costs.  Solowsky stated that his help would be conditional upon obtaining a release from

3

Sitindustrie, Tambourine and Hawskbay against any claim that Bocciolone and Brenman may have. He finally recommended that Weiss and his clients do not investigate and let them take care of the return of the funds. (Solowsky and P&S Mot. to Dismiss, Appx 3, 8, 30). Plaintiffs allege that Solowsky knew, at the time, that the accusations of a criminal nature against Bocciolone and Brenman were false and the facts misstated. (Pls.' Compl. 32, 5). In the meantime, the funds in the P&S bank account were transferred to a Gilbraltar bank. In December 2003, Plaintiffs claim, Solowsky allowed Reizen to dispose of the monies in the P&S account as payments to Reizen, Reizen's companies and P&S. Plaintiffs estimate that over $420,000 has been transferred from this account.

Plaintiffs allege that they become aware of the Solowsky Memorandum during the summer of 2003, and of the October 31, Telephone Conversation in Fall 2005. (Pls.' Compl. 32-33). And, they eventually discovered in May 2006 that Solowsky and P&S had aided Reizen in perpetrating a classic Ponzi scheme[3] by using the funds invested in Hawksbay to reimburse Power Trading, Ltd. and Specialty Funders, Ltd., the victims of a previous fraud. Plaintiffs contend that Solowsky had knowledge of this scheme, since he, through P&S, defended Reizen in that litigation. (Pls.' Compl. 17, 10).

Bocciolone and Brenman filed a complaint in this Court on January 23, 2008 and allege that Solowsky, P&S and Reizen (collectively "Defendants") "engaged since at least 2003 and in some instances from 1999 'in a continuing series of secret schemes to defraud Plaintiffs and others, by depriving them of monies which were rightfully Plaintiffs', and by making knowingly

---

[3] A Ponzi scheme is "a form of fraud in which belief in the success of a non-existent enterprise is fostered by payment of quick returns to the first investors from money invested by others." The New Shorter Oxford English Dictionary 2288 (7th ed. 1993).

4

false and malicious statements concerning Plaintiffs business activities.'"  (Pls.' Compl. 2, 5).

They allege that Defendants violated 18 U.S.C. §§ 1962(a) and (d) (Count 1); engaged in civil

conspiracy (Count 2); converted Plaintiffs' monies (Count 3); and tortiously interfered with

Plaintiffs' business relationship (Count 5).[4]  They further contend that Reizen breached his

fiduciary duties owed to Plaintiffs (Count 6); engaged in fraud (Count 8); and fraudulently

concealed material facts (Count 9).  Finally, they allege that P&S aided and abetted Reizen's

breach of fiduciary duties (Count 7).  They contend that, as a proximate result of Defendants'

conduct, "Ms. Bocciolone and Mr. Brenman have been forced to defend their actions in

numerous tribunals throughout Europe, Canada and the United States, thus incurring significant

attorney fees and costs"; "Ms. Bocciolone has been denied the ability to manage her investment

in Sitindustrie and, ultimately, lost her ownership in Sitindustrie".  (Pls.' Compl. 33-34).

    Now Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).

(Reizen's Mot. to Dismiss; Solowsky and P&S's Mot. to Dismiss).

## II.  LEGAL STANDARD

    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[e]very defense to a

claim for relief in any pleading must be asserted in the responsive pleading if one is required.

But a party may assert the following defenses by motion:...(6) failure to state a claim upon relief

can be granted."  The courts must "accept all factual allegations in the complaint as true" and

consider the "complaint in its entirety, as well as other sources courts ordinarily examine when

ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the

---

[4] Plaintiffs voluntarily dismissed count 4 of their complaint.  (Pls.' Notice of Voluntary Dismissal).

complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct 2499, 2509 (2007).  This, however, does not give a plaintiff *carte blanche* to merely aver a formulaic recitation of the elements of a claim supported by conclusory labels.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)) (citations omitted).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts . . . ." standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face.");  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) ("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004)).  "A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations-on their face-show that an affirmative defense bars recovery on the claim."  *Marsh*, 268 F.3d at 1022.

Whereas pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a general pleading shall only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

### III. DISCUSSION

**A.      Violation of RICO**

Plaintiffs allege that Defendants violated 18 U.S.C. §1962(a) and (d)  by committing, among others, "the act of mail fraud, indictable under 18 U.S.C. § 1341, wire fraud, indictable under 18 U.S.C. § 1341, money laundering, indictable under 18 U.S.C. § 1956, and embezzlement, chargeable under Colorado law . . . each of which constituted 'racketeering activity' within the meaning of 18 U.S.C. § 1961(5)."  (Pls.' Compl. 35, 1).

Pursuant to 18 U.S.C. §1962:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.[ ]
(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

To state a claim of civil RICO liability, a plaintiff must prove: (1) a conduct; (2) of an enterprise;  (3) through a pattern; (4) of racketeering activity.  *Florida Evergreen Foliage v. E.I. Dupont de Nemours, Co.*, 135 F.Supp.2d 1271, 1284 (S.D. Fla. 2001).

First, Defendants argue that Plaintiffs failed to identify a valid enterprise because Solowsky and P&S, in their capacity as counsels, were agents of Reizen and thus were not distinct from Reizen.  (Reizen's Mot. to Dismiss 4, 17; Solowsky and Pertnoy  & Solowsky's Mot. to Dismiss 12, 9).

### 1. An Enterprise

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  To establish a valid enterprise, each party to the enterprise must be distinct from the other.  Thus a person acting as an agent cannot be distinct from its principal for RICO purposes.  *See Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.*, 336 F.Supp.2d 1239, 1261-62 (S.D. Fla. 2004).  However, an attorney, who in the course of representation, "crosses the line between traditional rendition of legal services and active participation in directing the enterprise" is not shielded from his RICO liability.  *Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir.1997).

In the complaint, Plaintiffs allege Solowsky and P&S "were direct participants in the affairs of the enterprise" because:

1) The Solowsky Memorandum contained inaccurate information regarding Solowsky's 1999 representation of Sitindustrie;  (Pls.' Compl. 19, 2)

2) P&S accepted a $6 million wire transfer to its trust account when Defendants had actual knowledge that Plaintiffs, as well as others, claimed an interest in such monies; (Pls.' Compl. 19, 8).

3) Solowsky made false representations during his telephone conversations in furtherance of a racketeering enterprise;  (Pls.' Compl. 19, 12).

4) Solowsky and P&S transferred money out of their trust account for their own benefit. (Pls.' Compl. 20, 15).

These allegations, that I must accept as true for the purpose of this analysis, sufficiently

support the claim that Solowsky as well as P&S went beyond the offering of traditional legal advice and volunteered to take part in Defendants' enterprise.  Therefore, I conclude that Plaintiffs have sufficiently pleaded the requisite enterprise element of a civil RICO claim.

I acknowledge that Reizen, citing *Florida Evergreen Foliage,* pleaded that Plaintiffs did not identify a valid enterprise because Plaintiffs included "unknown parties" among the participants to the enterprise.  (Reizen Mot. to Dismiss 4, 19); *Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.*, 336 F.Supp.2d 1239, 1261-62 (S.D. Fla. 2004).  This case, however, only states that the reference "and/or others" does not meet "basic notice pleading requirements" when it refers to the only other party to an enterprise.  *Id.* at 1262.  Unlike the *Florida Evergreen Foliage* case where the plaintiff alleged that only one party "and/or others" participated in the enterprise, here, Plaintiffs allege that three parties, Reizen, Solowsky and P&S, participated.  Therefore, actual named parties exist to form the alleged enterprise, and *Florida Evergreen Foliage* does not apply.

## 2. A Pattern of Racketeering Activity

Defendants also argue that Plaintiffs failed to plead the alleged fraudulent acts supporting a RICO action.  (Reizen Mot. to Dismiss 6, 5; Solowsky and P&S Mot. to Dismiss 14, 20).  A "pattern of racketeering activity" consists of at least two acts of racketeering activity.  18 U.S.C. § 1961(5).  The pleadings of the acts of racketeering activity involving fraud allegations, such as mail or wire fraud, must meet  the particularity requirement of Rule 9(b) of Federal Rules of Civil Procedure.  *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville*, 287 Fed. Appx. 81, 86 (11th Cir. 2008).

Plaintiffs allege that Defendants committed acts of mail and wire fraud.  (Pls.' Compl. 35,

2).  Therefore, Plaintiffs have the burden of proving:

> (1) that the Defendant intentionally participated, (2) in a scheme to defraud, (3) the Plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a representation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as the result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages.

*Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002).[5]

Among the various acts of mail and wire fraud, Plaintiffs mention Reizen's repeated entreaties to transfer funds to the Bland Payne account, on the false promises that such funds would allow him and the attorneys he was working with to recover the Hawksbay ten million. (Pls.' Compl. 38, 3).  On the basis of these allegations, I find that Plaintiffs sufficiently pleaded that Reizen, on several occasions, intentionally participated in a scheme to defraud Plaintiffs of their money by means of false representations using the mails or wires, and that Plaintiffs reasonably relied on these representations, thus incurring a substantial loss of money.  These allegations alone are sufficient to state a RICO claim against Reizen.

With respect to Solowsky and P&S, their argument is that Plaintiffs did not prove the pattern of racketeering activity because, for each of the alleged acts of mail or wire fraud, the representations were either not made to Plaintiffs, nor relied upon by them.  (Solowsky and P&S Mot. to Dismiss 16, 15).  However, when asserting mail or wire fraud in a RICO claim, there is no requirement that the plaintiff itself rely on the representation.  *Bridge v. Phoenix Bond &*

---

[5] The sixth element of fraud, plaintiff's reliance on the representation made on furtherance of the fraudulent scheme, has been modified by the Supreme Court in *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2141 (2008).  *Bridge* abrogated *Sikes* to the extend that reliance by plaintiff itself is not an element of a civil RICO claim.

*Indem. Co.*, 128 S. Ct. 2131, 2141 (2008).   Therefore, Plaintiffs sufficiently pleaded that the 2003 Solowsky-Weiss telephone conversations (including the October 31 Telephone Conversation) constituted fraud and thus sufficiently pleaded the pattern of racketeering activity required for a civil RICO claim.

### 2. The Four-Year Statute of Limitations

Although 18 U.S.C. §1962 provides no limitation period for a civil RICO action, the Supreme Court has set a four-year time limit.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  The Eleventh Circuit, in conformity with the Supreme Court *Rotella* case, held that the date of accruance of the action shall be the date of the discovery by plaintiff of the injury.  *Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001);  *Rotella v. Wood*, 528 U.S. 549, 552-53 (2000).  "The limitations period for a later-occurring predicate act accrues separately only if the later act inflicts a 'new and independant' injury, and not a mere continuation of the initial injury."  *Curtis Inv. Co., LLC v. Bayerische Hypo-Und Vereinsbank*, 2007 WL 4564133, *9 (N.D. Ga. Dec. 20, 2007).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate "only if it is 'apparent from the face of the complaint' that the claim is time barred."  *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005).

Defendants Solowsky and P&S allege that Plaintiffs "knew about all of their alleged RICO injuries more than four years before they filed this action".  (Solowsky and P&S Mot. to Dismiss 14, 18). On the other hand, Plaintiffs argue that, despite the absence of the specific dates of their losses in the complaint, said losses did occur at a later date.  They also argue that they identify in their RICO statement losses occurring from 1999 through 2006.  (Pls.' Resp. to

Solowsky and P&S Mot. to Dismiss 13, 1-4; Pls. Civil RICO Case Statement 9, 1).  Based on these allegations, I cannot conclude that Plaintiffs' RICO claim is time-barred at this time.

Therefore, Plaintiffs' RICO claim should not be dismissed.

### B.    Civil Conspiracy

"The elements that a plaintiff must allege for a conspiracy claim are that (1) two or more parties (2) agree (3) to commit an unlawful act."  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007).

Defendants argue that the civil conspiracy count must fail because (1) of a lack of an underlying wrong, *i.e.* the alleged theft by false pretenses, conversion and abuse of process; and (2) because Solowsky and P&S cannot conspire with their client.  (Reizen Mot. to Dismiss 16, 25; Solowsky and P&S Mot. to Dismiss21, 4-16).  As discussed above, Defendants' argument as to their principal-agent capacity must fail.  *Supra*, § IIIA1; *Handeen*, 112 F.3d at1349. Concerning the underlying wrong, under Florida Law, the crime of obtaining property by false pretenses has been merged into the larceny statute.   Fla. Stat. § 812.014; *Darwish v. State of Florida*, 937 So.2d 789, 793 (Fla. 2d DCA 2006). This statute states that a person:

> commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property. (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014

In evaluating Plaintiffs'complaint, I find that Plaintiffs pleaded enough facts to sustain a claim of larceny.  Because I find that Plaintiffs have sufficiently pleaded the underlying theft, their conspiracy claim will not be dismissed.

### C.    Conversion

Plaintiffs allege that Defendants wrongfully exercised dominion and control over Plaintiffs' monies.  (Pls.' Compl. 40, 9).  Plaintiffs' contention is that Reizen wrongfully obtained possession of Plaintiffs' money through fraudulent representations that the money would be used to secure the release of the Hawksbay ten million.  Further, Plaintiffs argue that Solowsky and P&S, with knowledge that Plaintiffs claimed these funds, misappropriated Plaintiffs' money when they allowed funds labeled "Hawksbay/Brenman" to be transferred into their bank account.  (Pls.' Compl. 16, 6; Pls'. Compl. 19, 8)

Under Florida Law, "[t]here is nothing in the nature of money as personal property which makes it an improper subject of conversion so long as it consists of specific money capable of identification."  *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. DCA 1970).  "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit."  *Id*. at 648.

Plaintiffs have alleged that certain transfers have been made to the Bland Payne account and the P&S bank account.  Even though they may not presently know with certainty the total amount of monies converted, they identify deliveries to these accounts and each delivery could be a basis for a claim of conversion.  A complaint will withstand a motion to dismiss if it sets forth "enough facts to raise a reasonable expectation that discovery will reveal evidence [of the alleged violation]."  *Twombly*, 127 S.Ct. at 1959.  There is nothing indicating that Plaintiffs' money (the alleged amount in excess of $700,000) will not be capable of identification.  The conversion count therefore will not be dismissed.

13

### D.   Tortious Interference with a Business Relationship

Plaintiffs contend that the actions of Reizen, Solowsky and P&S interfered with

Bocciolone's economic advantage.  (Pls.' Compl. 42, 12).

> Under Florida Law, to state a cause of action for tortious interference with a
> business relationship, the aggrieved party must show four things: 1) the existence
> of a business relationship with another, 2) the defendant's knowledge of that
> relationship, 3) an intentional and unjustified interference with the relationship by
> the defendant, and 4) that the aggrieved party was damaged as a result of the
> defendant's interference.

*Marquez v. PanAmerican Bank*, 943 So.2d 284, 286 (Fla. 3d DCA 2006).

Plaintiffs describe Bocciolone's business relationship, the first element, as "an economic

expectation and anticipated advantage from her ownership and participation in Sitindustrie".

(Pls.' Compl. 42, 12).  Defendants do not contest they had knowledge of this relationship, the

second element.  Reizen argues, however, that Plaintiffs failed to plead with sufficient certainty

that the "alleged damages suffered by Bocciolone were the result of Reizen's wrongful

interference with Bocciolone's business relationship with Sitindustrie."  (Reizen Mot. to Dismiss

16, 16).

Plaintiffs' allegation that the "misappropriation of Sitindustrie funds by Reizen"

proximately caused Bocciolone to be denied her ability to manage her investment in Sitindustrie

and to lose her ownership position is sufficient on its face to "raise a right to relief above the

speculative level."  (Pls.' Compl. 34, 4);  *Twombly.*, 127 S. Ct. at 1965.

Solowsky and P&S also argue that Bocciolone was removed from her position in 2001,

and therefore any act of interference by Solowsky and P&S in 2003 could not have interfered

with an economic advantage she had already lost.  (Solowsky and P&S Mot. to Dismiss 26, 6).

14

As mentioned above, Bocciolone's economic advantage for this claim is not her position of control in Sitindustrie but rather her ownership, which she lost gradually.  Therefore, any interference that occurred in 2003 may have caused her additional prejudice.

I find that Plaintiffs sufficiently pleaded their claim of tortious interference with economic advantage against Reizen and Solowsky and P&S.

### E.      Breach of Fiduciary Duty

Plaintiffs allege that Reizen, through a series of misrepresentations, obtained the delivery of over $700,000 of Plaintiffs' money in exchange for the promise he could secure the return to Sitindustrie of the Hawksbay ten million.  (Pls.' Compl. 43-44).

The elements of breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by the breach.  *See Williams v. Hunt Bros. Constr., Inc.*, 475 So.2d 738, 741 (Fla. 2d DCA 1985).  "Fiduciary relationships are either expressly or impliedly created."  *Capital Bank v. MVB. Inc.*, 644 So.2d 515, 518 (Fla. 3d DCA 1994).  There is a fiduciary relationship when "confidence is reposed by one party and a trust accepted by the other."  *Id.* at 518.

Plaintiffs placed their confidence in Reizen because of his claims that he could help secure the return of the money and Reizen accepted this fiduciary relationship, this trust, when he accepted the monies.  Therefore, I conclude that on the face of the complaint a fiduciary relationship existed.  The claim of breach of fiduciary duty by Reizen should not be dismissed.

### F.      Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs allege that Solowsky and P&S aided and abetted Reizen's breach of the fiduciary duty he owed to Plaintiffs by "among other acts, facilitating the use of Plaintiffs'

monies, acting as the hidden arm of the Ponzi scheme, being present during Reizen's investment schemes, being an active participant in the Ponzi scheme and in trying to divert attention from his clients and himself to Plaintiffs."  (Pls.' Compl. 44, 14).

The elements that Plaintiffs must allege for a viable claim under Florida law are: (1) that Reizen breached his fiduciary duty, (2) that Solowsky and P&S were aware of Reizen's wrongful conduct, and (3) that they knowingly and substantially assisted the violation.  *See Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94-95 (5th Cir. 1975); *Smith v. First Union Nat'l Bank*, 2002 WL 31056104, at *2 (S.D. Fla. Aug. 23, 2002).

I already concluded that Plaintiffs sufficiently pleaded that Reizen breached his fiduciary duty.  I must accept as true Plaintiffs allegations that Solowsky and P&S were aware of Reizen's conduct.  (Pls.' Compl. 44, 14).  Finally, I find that Plaintiffs sufficiently pleaded the third element by alleging that Solowsky and P&S accepted the $6,000,000 in their trust account and then disbursed portions to themselves and others, thereby knowingly and substantially assisting the breach.  This claim, therefore, should not be dismissed.

### G.    Fraud

Plaintiffs allege that Reizen made false representations of material fact, including: "(a) that Reizen had significant experience in the field of fund management and investment of funds in instruments issued by banks, insurance companies and other institutions; and (b) that monies provided to Reizen would be used for attorney fees to recover the Hawksbay investment funds" and that in reliance upon these allegations, they suffered damages.  (Pls.' Compl. 45, 8).

Reizen argues that, in their Complaint, Plaintiffs did not allege with the requisite particularity the circumstances constituting fraud, as required by Rule 9(b) of the Federal Rules

of Civil Procedure.  (Reizen's Mot. to Dismiss, 9, 10).  Specifically, Reizen contends that Plaintiffs did not identify the extent of the representations Reizen made with respect to his experience and that Plaintiffs did not demonstrate "with any particularity how the alleged misrepresentations proximately harmed Plaintiffs."  (Reizen's Mot. to Dismiss, 9, 10).

 In order to state a claim for fraud under Florida law, Plaintiffs must prove (1) a false statement of material fact; (2) that the party making the representation knew it was false when made; (3) that the statement was made to induce the person to whom the statement was made to act in reliance upon it; and (4) that this person suffered damages as a result.  *Mobil Oil Corp. v. Dade County Esoil Mgmt Co.*, 982 F. Supp. 873, 878 (S.D. Fla. 1997).  To satisfy the particularity required by Rule 9(b), however, the complaint "need only  provide a reasonable delineation of the underlying acts and transactions allegedly constituting fraud" and should give "defendants fair notice of the nature of plaintiffs' claim and the grounds upon which it is based." *Id.* at 878 (citing *In re Checkers Sec. Lit.*, 858 F. Supp. 1168, 1175 (M.D. Fla. 1994) and *Zuckerman v. Franz*, 573 F. Supp. 351, 355 (S.D. Fla. 1983)).

In their complaint, Plaintiffs give a reasonable delineation of the underlying acts constituting fraud.  Plaintiffs allege that Reizen induced them to rely on his representations of his experience in the field of fund management and investment of funds to invest money they ultimately lost as a result.  (Pls.' Compl. 11-13).  Plaintiffs further allege that they relied on Reizen's misrepresentations that he would use Plaintiffs' monies for attorney fees to recover the Hawksbay investment funds and lost these monies as a result.  Reizen has been given a fair notice of the nature of the claim and the grounds upon which it is based. This count will therefore not be dismissed.

### H. Fraudulent Concealment

Plaintiffs allege that Reizen concealed, *inter alia*, his lack of experience in the field of fund management and investment of funds; his liability in the Power Trading litigation; and that Plaintiffs personal funds would be used for his own purposes. Plaintiffs further contend that Reizen had a duty to disclose these facts, that Reizen intended Plaintiffs to rely on these facts, and in that reliance Plaintiffs lost money. (Pls.' Compl. 46, 9).

Plaintiffs' allegations of fraudulent concealment are, just as the fraud claim, subject to the standards of Rule 9(b). Plaintiffs must prove: (1) a misrepresentation of a material fact, (2) knowledge of the representor of the misrepresentation or absence of knowledge by the representor of the truth or falsity of the representations; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003).

Plaintiffs pleaded that Reizen misrepresented material facts, *i.e.* its lack of experience in management and investment of funds and his liability in the Power Trading suit, and that he knowingly concealed these facts to induce Plaintiffs to provide Reizen with monies that have been lost as a result. Plaintiffs' allegations fulfill all of the above prongs, and therefore Plaintiffs sufficiently pleaded a fraudulent concealment claim. Accordingly, the motions to dismiss on these grounds will be denied.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss [D.E. 20] [D.E. 24] are

**DENIED**..

**DONE AND ORDERED** in Chambers at  Miami, Florida, this 3rd day of April 2009.


_____
MARCIA G. COOKE
United States District Judge

19